UNITED STATES of America,
Plaintiff–Appellee,

v.

Dwight MASON, Defendant–Appellant.

No. 92–5322.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1992.

Decided May 17, 1993.

Martin Patrick Sheehan, Volk, Franko-vitch, Anetakis, Recht, Robertson & Heller-stedt, Wheeling, WV, argued (Martin J. Gau-ghan, Weirton, WV, on brief), for defendant-appellant.

Samuel Gerald Nazzaro, Jr., Asst. U.S. Atty., Wheeling, WV, argued (William A. Ko-libash, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WILKINS, Circuit Judge:

Dwight Mason was convicted of distribution of cocaine base and distribution of cocaine base within 1,000 feet of a school in violation of 21 U.S.C.A. §§ 841(a)(1), 860(a) (West 1981 & Supp.1992). The primary issue before us is whether the district court erred by allowing the Government to cross-examine character witnesses by posing questions based on the assumption that Mason was guilty of the offense charged, and if so, whether the error was harmless. Because the cross-examination was improper and constituted reversible error, we remand for a new trial.

## I.

An informant for a local police agency outfitted with a concealed recorder entered a bar for the purpose of making purchases of drugs. At trial he testified that he purchased one rock of cocaine base from Dwight Mason and another rock from another individual. On cross-examination, the informant acknowledged that he was paid by the Government for each purchase he made.

The Government also introduced an audio cassette tape of what was purported to be a verbal recordation of the transaction. Although the informant testified that he could identify Mason's voice on the tape, the quality of this cassette was concededly poor. Indeed, Officer Black, a law enforcement agent involved in the investigation, testified that the clarity of the tape "was very bad" and that the noise in the bar was so overpowering that "you couldn't hear anything else that was happening." Consequently, the only direct evidence of Mason's involvement in a drug transaction was the testimony of an informant who was paid according to the number of "buys" he made.

After the Government presented its case, the defense elicited the testimony of three character witnesses, the testimony of only two being relevant here, to testify on Mason's behalf. On direct examination, defense counsel asked Owens Brown about Mason's reputation "in the community for truthfulness, honesty, and reliability." Because Brown's lengthy answer recited Mason's efforts to help others and was nonresponsive, defense counsel repeated the question. Brown then testified that Mason's reputation was one of an honest and reliable person. Similarly, on direct examination of witness Thelma Griffin, defense counsel asked wheth-

er Mason enjoyed a reputation for honesty and reliability. Griffin responded that Mason enjoyed a good reputation.

On cross-examination, the Government asked Brown whether it was his personal opinion that Mason was honest and truthful, to which Brown responded that Mason had always been honest and truthful. The Government continued:

Q: Would your opinion of Mr. Mason change if you knew that he distributed drugs?

. . . .

A: My opinion would change.

Q: And in what way would it change?

A: Well, you know, I believe, you know, it is wrong to distribute drugs.

Q: You are not in favor of distributing drugs, are you?

A: No, I'm not.

Likewise, on cross-examination of Griffin, the Government asked:

Q: [W]ould your opinion of Mr. Mason change if you knew he distributed drugs?

. . . .

[I]f you did, if that were, in fact, true, and this jury thought it was true, would your opinion of him change?

A: No, it wouldn't.

Q: Okay, you would still think he was an honest and good guy?

A: Yeah, I would.

Defense counsel timely objected to this cross-examination of Brown and Griffin, contending that positing hypothetical questions that assumed that the defendant was guilty of the misconduct for which he was charged was improper. The district court overruled the objections.

## II.

### A.

In *United States v. Siers*, 873 F.2d 747 (4th Cir.1989), this court, in forceful and unequivocal language, stated that questions put to defense character witnesses that assumed a defendant's guilt of the crime for which he was charged were improper:

Such questions have been disapproved by, apparently, every court which has considered them, and we agree. We further agree that the questions put have no place in a criminal trial.

... [P]utting to [the witnesses] a hypothetical fact situation corresponding to the crime for which Siers was being tried, is error, and again, we neither condone nor excuse the same.

*Id.* at 749 (citations and internal quotation marks omitted). *Siers* compels the holding that the questions posed by the Government were improper.

Attempting to distinguish *Siers*, the Government argues that the cross-examination was proper because defense counsel attempted to elicit the personal opinions of the two character witnesses, rather than community reputation, and thus guilt-assuming hypothetical questions were proper in response. While we do not view this as an accurate characterization of the direct examination, we need not labor over the attempt by the Government to draw this distinction. In either case, this type of cross-examination is not proper and should not have been allowed.

Character testimony in a criminal trial is admitted pursuant to Rule 405(a)[1] of the Federal Rules of Evidence only as it may bear on the issue of guilt. Although an argument can be made that guilt-assuming hypothetical questions may be probative of the credibility of a non-expert witness, an opinion elicited by a question that assumes that the defendant is guilty can have only

---

1. Fed.R.Evid. 405 provides:

    (a) **Reputation or opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

    (b) **Specific Instances of conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

negligible probative value as it bears on the central issue of guilt. *See United States v. Morgan*, 554 F.2d 31, 34 (2d Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977). And, in addition to a proper application of the rules of evidence, adherence to a basic concept of our justice system, the presumption of innocence, is not served by this line of questioning. *See United States v. Oshatz*, 912 F.2d 534, 539 (2d Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991). We are in harmony with all circuits, except one, that, when called upon to address this issue, condemned the use of guilt-assuming hypothetical questions asked of lay character witnesses, whether testifying about a defendant's reputation in the community for a character trait or expressing an opinion about a trait. *See Oshatz*, 912 F.2d at 539 (opinion and reputation testimony); *United States v. Barta*, 888 F.2d 1220, 1224–25 (8th Cir.1989) (reputation testimony); *United States v. McGuire*, 744 F.2d 1197, 1204–05 (6th Cir. 1984) (opinion and reputation testimony) (dicta), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985); *United States v. Williams*, 738 F.2d 172, 176–77 (7th Cir.1984) (same); *United States v. Polsinelli*, 649 F.2d 793, 796–97 (10th Cir.1981) (reputation testimony); *United States v. Candelaria–Gonzalez*, 547 F.2d 291, 294 (5th Cir.1977) (same). *But see United States v. White*, 887 F.2d 267, 274–75 (D.C.Cir.1989) (holding that although cross-examination of witnesses who testify solely as to community reputation with guilt-assuming hypothetical questions may be improper, such cross-examination is not error when the witness gives his own opinion).

### B.

Concluding that the cross-examination of the defense character witnesses was improper, however, does not end our inquiry. We must further determine whether such error was harmless. *See Siers*, 873 F.2d at 749 ("If such errors or defects ... do not affect the substantial rights of the parties, we must not reverse."). The defendant in *Siers* was charged with assaulting and attempting to kill a United States Postal Service employee.

*Id.* at 748. The victim gave an eyewitness account of the event, and the defendant admitted shooting the victim with a shotgun. *Id.* The district court, evincing much indulgence, permitted the defendant to call a total of 14 character witnesses who testified as to his good reputation as a peaceful and law-abiding citizen. *Id.* at 749. During the cross-examination of two of these witnesses, the Government improperly asked the witnesses hypothetical questions that assumed that the defendant committed the criminal act for which he was charged. *Id.* The *Siers* court held that under these circumstances the improper cross-examination resulted in harmless error under 28 U.S.C.A. § 2111 (West 1982). *Id.*

### C.

■ The outcome of a harmless error analysis is by necessity fact-specific. What may be harmless within the context of one set of facts may prove to be otherwise within the context of another. Here, the only direct evidence that Mason distributed cocaine base was the testimony of an informant who was paid on the basis of the number of "buys" he made. Evidence that might have corroborated his testimony was an audio cassette recording with clarity so poor that the principal law enforcement agent involved in the investigation testified that no drug transaction could be discerned. While the informant's credibility was for a jury to determine, the absence of other evidence, and the prior direct admonition of this court in *Siers*, convinces us that the error resulting from the improper cross-examination was not harmless. *See Polsinelli*, 649 F.2d at 797–98 (reversing conviction when evidence consisted of testimony of Government witness stating he had purchased cocaine base from defendant and when Government posed improper guilt-assuming hypothetical questions to defense character witnesses). Because we cannot conclude that the evidence of Mason's guilt was such that the improper cross-examination had no reasonable likelihood of contributing to his conviction, the error committed was reversible.[2]

---

**2.** A harmless error analysis applied to the facts supporting the other count of the indictment

compels the same result.

The *Siers* court concluded its discussion of positing guilt-assuming hypothetical questions with an admonition:

> [W]e invite the attention of the district courts and the bar to the fact that the government frequently will not be in such luck as to be able successfully to claim harmless error for cross examination of character witnesses in the manner engaged in by the government in this case.

*Siers,* 873 F.2d at 750. We again advise both bench and bar that this type of cross-examination is improper.

> "[A] hypothetical question such as the one at issue herein ... should not be asked." Though it has been said that the only word in a judicial opinion that prosecutors understand is "reversed," we urge them, unless they wish to see this word more often, to add to their lexicon the words "should not."

*Oshatz,* 912 F.2d at 541 (quoting *Morgan,* 554 F.2d at 34). As *Siers* prophesied, the positing of a guilt-assuming hypothetical question on cross-examination to a character witness may well result in error subsequently not deemed harmless.

### III.

We hold that the cross-examination of Mason's character witnesses was improper and not harmless error. We have carefully reviewed all of his other assignments of error—including the limitation the district court placed on cross-examination of witnesses, evidentiary rulings dealing with hearsay testimony, the introduction of testimony pursuant to Rule 404(b) of the Federal Rules of Evidence, the introduction of cocaine base into evidence, statements made by veniremen during voir dire and polling of the jurors after trial to determine if they were prejudiced by these statements, the denial of his request for severance of the two counts, and the denial of his request for a continuance—and find them to be without merit.

*REVERSED AND REMANDED.*