8 F.3d 821
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Claude V. COOLEY, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Lois F. PEARCE, Defendant-Appellant.
 Nos. 92-5635, 92-5669.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 29, 1993.
Decided: October 18, 1993.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Statesville. Graham C. Mullen, District Judge. (CR-91-54-ST-MU)
 Argued: Jesse James Waldon, Jr., Waldon & Dominguez, Charlotte, North Carolina, for Appellant Cooley;
 Harold Johnson Bender, Bender & Matus, Charlotte, North Carolina, for Appellant Pearce. Kenneth Davis Bell, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 On Brief: Jerry W. Miller, United States Attorney, Charlotte, North Carolina, for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Claude Cooley and Lois Pearce appeal their convictions on one conspiracy and one narcotics possession count. Cooley also appeals his sentence. We find no reversible error, and we affirm.
 
 
 2
 * Robert Turner was released from prison in 1991 and promptly returned to drug dealing. Cooley was his supplier, and he often picked up cocaine at the home of Cooley's girlfriend, Pearce. Turner soon moved from sales of ounces of cocaine to deliveries of kilograms for Cooley. Robert Tart also received cocaine from Cooley.
 
 
 3
 In an effort to drum up business, Turner contacted a former fellow inmate, Perlie Workman. Workman was working for the police. In September, 1991, Turner and Cooley traveled to Workman's home in Hickory, North Carolina. Turner and Workman, with Cooley seated nearby, tried to negotiate a sale of cocaine. According to Turner, the cocaine that he had hoped to sell to Workman was to have come from Cooley. No agreement was reached that day.
 
 
 4
 On October 24, 1991, Cooley called Tart and asked him to accompany Turner on a delivery of nine ounces of cocaine to a customer in Hickory. The delivery was made by Turner and Tart to undercover policemen posing as Workman's confederates. The $9,000 proceeds were delivered to Cooley.
 
 
 5
 Workman called Turner and requested seven more kilograms. On the night of October 31, 1991, Cooley, Pearce and Tart left for Georgia to meet with Cooley's supplier, Gus Kloszewski. Kloszewski had been supplying Cooley with cocaine for the previous few months in amounts ranging from five to forty kilograms. During the meeting in an Atlanta hotel, Pearce attempted but failed to negotiate a better price than the $17,000 per kilogram quoted by Kloszewski. Eight kilograms were purchased that night.
 
 
 6
 The trio traveled to Hickory the next day and rendezvoused with Workman's "confederates" at a local Hardee's. After Cooley ascertained that they had the purchase price, arrangements were made to drive to a "safe house" where the exchange could be made. Upon arrival at the designated spot, the trio was arrested and the eight kilograms seized. Turner was arrested soon thereafter.[1]
 
 
 7
 Cooley and Pearce were indicted on two counts: (1) conspiracy to possess with intent to distribute and to distribute cocaine; the conspiracy was alleged to have been in effect from September, 1991, through the date of the arrests, November 1, 1991; and (2) possession with intent to distribute more than five kilograms of cocaine. Tart and Turner were indicted on these two counts as well as on two substantive counts arising out of the October 24th delivery to Workman's "confederates." Prior to Cooley and Pearce's trial, Tart and Turner pleaded guilty and testified for the government. Kloszewski was indicted separately and also testified against the appellants.
 
 
 8
 Cooley and Pearce were each convicted on both counts. Cooley was sentenced to life in prison, and Pearce was sentenced to 151 months. In this consolidated appeal, they claim that the government adduced evidence that went well beyond the parameters of the offenses with which they were charged. They also attack the closing argument of the Assistant United States Attorney, and each raises a separate evidentiary issue. Cooley also argues that his sentencing hearing was improperly conducted.
 
 II
 
 9
 Cooley and Pearce complain that the evidence of wrongdoing adduced at trial far exceeded the scope of the conspiracy alleged in the indictment. The appellants frame the issue as one of prejudicial variance between the indictment for a single conspiracy and the proof of three distinct conspiracies: (1) the 9-ounce deal on October 24, 1991; (2) Kloszewski's dealings with Cooley and Pearce prior to the beginning of the charged conspiracy; and (3) the Hardee's transaction that culminated in the arrests of the defendants. They claim that only evidence concerning the October 31-November 1 events (the Hardee's transaction) was properly admissible.
 
 
 10
 This issue was not raised below by objections to the allegedly prejudicial testimony or by requests for jury instructions on multiple versus single conspiracies.[2] Therefore, the issue was forfeited, and we review under a plain error standard. See Fed. R. Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); United States v. Olano, 113 S.Ct. 1770 (1993) (forfeited errors that are clear and affect substantial rights may be corrected on appeal).
 
 
 11
 * The crux of appellants' argument with regard to the October 24th incident is that there was no proof of any connection to Cooley. However, Tart testified that Cooley asked him to accompany Turner to make the delivery to Workman, and Turner testified that the cocaine that was eventually delivered was the same cocaine that he had previously received from Cooley for sale to a customer and that was later repossessed for nonpayment. There was clearly sufficient evidence to bring the October 24th transaction within the ambit of the charged conspiracy.
 
 B
 
 12
 Kloszewski testified about his dealings with the defendants in the months preceding the inception of the charged conspiracy. The court sua sponte cautioned the jury that "this defendant is not on trial for any offense or conduct not alleged in the indictment." The danger of jury confusion and the "transference of guilt from one [conspirator] to another across the lines separating conspiracies" is practically nonexistent. Kotteakos v. United States, 328 U.S. 750, 774 (1946). Moreover, as we discuss in part III below, this evidence was certainly relevant to help put the Cooley-Kloszewski relationship into context. The introduction of evidence about Kloszewski's dealings with the appellants prior to September, 1991, was clearly not plain error.
 
 III
 
 13
 Appellants also claim that the introduction of evidence of wrongdoing that allegedly occurred outside the charged conspiracy amounted to a violation of Fed. R. Evid. 403 (probative value outweighed by the danger of unfair prejudice) and Rule 404(b) (other bad acts used to prove actions in conformity therewith).[3] Again, because there was no objection to the introduction of this testimony, we review for plain error. As we noted above in section II-A, there was evidence that the October 24th transaction was an integral part of the charged conspiracy. The other evidence claimed to have been erroneously admitted, Kloszewski's testimony,[4] was helpful in putting his role in the overall conspiracy into context. See United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980) (evidence of other crimes is admissible when such evidence is necessary to provide a "full presentation" of the case). We find no plain error.
 
 IV
 
 14
 During the direct examination of Tart, the prosecutor asked where he had first met Cooley. When Tart responded "in the state pen," the trial judge promptly instructed the jury to disregard the answer. Cooley made no attempt to have the cautionary instruction strengthened in any way. The government concedes that it was error to elicit this information. We review for harmless error.
 
 
 15
 "Any error ... which does not affect substantial rights shall be disregarded." Fed. R. Crim. P 52(a). Error is harmless if, after looking at the entire case, "we believe that it is highly probable that the error did not affect the judgment." United States v. Nyman, 649 F.2d 208, 212 (4th Cir. 1980) (internal quotation omitted). The analysis suggested in Nyman is to consider "the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." Id. (quoting Gaither v. United States, 413 F.2d 1061, 1079 (D.C. Cir. 1969)).
 
 
 16
 The case was not close; Cooley was arrested after an attempted exchange of seven kilograms of cocaine to undercover policemen in a Hardee's parking lot. The issue affected by the error is characterized by Cooley as his "character." Of course, a defendant's character is always an issue to some degree-is he the sort of person who would do what he is charged with?-but the significance of the issue diminishes somewhat when the defendant is caught red-handed. See United States v. Morrow, 731 F.2d 233, 235 n.4 (4th Cir.) (witness's statement that defendant had been in prison deemed a"mere superfluity" in view of the abundant evidence of guilt), cert. denied, 467 U.S. 1230 (1984). Moreover, because Cooley did not testify in his own defense, his credibility was not an issue. Finally, steps to mitigate the damage were swiftly taken. The court cautioned the jurors immediately, and there was no other reference to the matter. See United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir. 1990) (noting cautionary instruction and lack of repeated reference as factors supporting finding of harmless error), cert. denied, 498 U.S. 1083 (1991). We hold that the error was harmless under the facts of this case.
 
 V
 
 17
 Pearce put on six character witnesses. During the cross-examination of one of them, Peggy Underwood, the prosecutor asked if the witness's opinion of Pearce would change if Pearce were convicted of a "multi-kilo drug conspiracy." Defense counsel's objection to the questioning was overruled, and Ms. Underwood finally guessed that she would "be devastated." On appeal, the government concedes that this line of questioning was error under this court's opinion in United States v. Mason, 993 F.2d 406 (4th Cir. 1993). The issue before us is whether the error was harmless.
 
 
 18
 In United States v. Siers, 873 F.2d 747 (4th Cir. 1989), we condemned the use of guilt-assuming questions, but we found the error in that case to be harmless because the evidence of guilt was overwhelming (eyewitness testimony and a confession by the defendant) and the improper questions were only asked of two of the 14 character witnesses called by the defendant. In Mason, on the other hand, the only direct evidence against the defendant was the testimony of a single informant, and guilt-assuming questions were posed to two of the three character witnesses who testified for the defendant. The decision to reverse Mason's conviction rests primarily on the relative weakness of the government's evidence in that case.
 
 
 19
 As we pointed out in Mason, "[t]he outcome of a harmless error analysis is by necessity fact-specific." Id. at 409. The evidence against Pearce included the testimony of three co-conspirators. Moreover, the improper questions were asked of only one of the six character witnesses. The facts here more closely resemble those in Siers. Because we find no reasonable likelihood that the improper cross-examination contributed to Pearce's conviction, we deem the error to be harmless.
 
 VI
 
 20
 Each conspirator was examined by both sides on his hope that the government would make a motion to lower his sentence on the basis of the testimony he offered.[5] In their closing statements, the defendants' lawyers repeatedly argued that the testifying conspirators were lying in order to get sentence reductions. In his final closing argument, the prosecutor described the process by which a defendant is considered for a reduction of his sentence on the basis of assistance to authorities. The prosecutor said that he first had to be convinced that the defendant was telling the truth, and then the same defendant had to convince the sentencing judge. The prosecutor told the jury that if he believed that the witness had lied, "I would not call that substantial assistance even if it's hurting my case because I promise you, that's not good enough." The defendants objected on the grounds that this was improper comment on the credibility of the government's witnesses; the objection was overruled.
 
 
 21
 Whether the prosecutor's comment was improper is a close question. For the purposes of this opinion, we will assume that it was and move on to an examination of whether the defendants were prejudiced.[6] See United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990) (to constitute reversible prosecutorial misconduct,"[improper] remarks ... must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial."). To determine whether a defendant was prejudiced, we look at the degree to which the jury may have been misled, whether the remarks were isolated or extensive, the strength of the evidence of guilt, and whether the remarks were deliberately made to divert the jury's attention to extraneous matters. Id. (citing United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983), cert. denied, 466 U.S. 972 (1984)).
 
 
 22
 The prosecutor's comment was brief and isolated. There was no danger of misleading the jury, as would more likely be the case where a prosecutor misstates evidence. The comment did not divert the jury's attention from the task at hand; rather, the comment was uttered during remarks on what was perhaps the core concern of the jurors, the credibility of the defendants' co-conspirators. The government's evidence was fairly strong, particularly against Cooley. We find that the comment in question did not deprive the defendants of a fair trial.
 
 VII
 
 23
 We are also obliged to gauge the cumulative effect of these errors: the guilt-assuming questions asked of one of Pearce's character witnesses, the response by a government witness that he had met Cooley in the state penitentiary, and the (possibly erroneous) credibility vouching remark by the prosecutor. In view of the direct evidence of guilt, we readily conclude that these errors, taken together, were harmless.
 
 VIII
 
 24
 Cooley was sentenced under 21 U.S.C. § 841(b)(1)(A), which mandates a life sentence for anyone convicted of a violation of § 841(a) involving more than five kilograms of cocaine and who has been previously convicted of two or more felony drug offenses. Under 21 U.S.C. § 851(a)(1), any time the government intends to request an enhanced sentence on the basis of prior convictions, a notice of such intent must be filed with the court and a copy served on the defendant. The government did so here. Section 851(b) provides that the court shall after conviction but before pronouncement of sentence inquire [of the defendant] whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
 
 
 25
 Cooley argues that this section mandates a particularized colloquy with the defendant at the sentencing hearing itself and that the court's failure to conduct such a colloquy requires a remand for resentencing. We hold that resentencing is not required in this case.
 
 
 26
 Cooley was apprised of the government's intent before the sentencing hearing. The probation officer who prepared the presentence report[7] concluded that Cooley's criminal record mandated imposition of a statutory life sentence. Moreover, Cooley did not then and does not now claim that the convictions relied upon by the court are in any way invalid. We are at a loss to imagine what would be accomplished at a resentencing. Although a colloquy was not held, one was not necessary under these circumstances. See United States v. Campbell, 980 F.2d 245, 252 (4th Cir. 1992) (affirming enhanced sentence despite court's failure to conduct a § 851(b) colloquy on grounds that "the substantive protections underlying [§ 851(b) ] were provided ..."), cert. denied, 113 S.Ct. 2446 (1993); see also United States v. Garcia, 954 F.2d 273 (5th Cir. 1992) (strict compliance withs 851(b) not always required).
 
 IX
 
 27
 Because we find no reversible error in the conduct of the trial or in the sentencing procedure, we affirm the sentence imposed on Cooley and each of the convictions of both appellants.
 
 AFFIRMED
 
 
 [1]
 The foregoing rendition of the facts is largely based on the testimony of the government witnesses. Appellant Lois Pearce testified and denied any involvement in or knowledge of the conspiracy, although she admitted to being Cooley's girlfriend and to knowing Turner and Tart. She also denied traveling to Atlanta on October 31, 1991, but she admitted that she and Cooley drove her car to the Hardee's on November 1. Cooley did not testify
 
 
 [2]
 Although the appellants did raise the issue in their motions for acquittal (both at the close of the government's case and again at the close of their cases), these motions are not the functional equivalent of requests for jury instructions or objections to the introduction of evidence. See United States v. One Mercedes-Benz, 542 F.2d 912, 915 (4th Cir. 1976) ("Questions not raised and properly preserved in the trial forum will not be noticed on appeal in the absence of exceptional circumstances.") (emphasis added)
 
 
 [3]
 Appellants also argue that allowing evidence of crimes outside the period charged in the indictment violated Fed. R. Crim. P. 8(b) (improper joinder of defendants). No motion to sever was made below, and the propriety of separate trials was clearly not self-evident prior to trial in this case
 
 
 [4]
 During direct examination, in addition to his testimony about his dealings with the appellants prior to the beginning of the charged conspiracy, Kloszewski testified very briefly about his larger East coast drug operation that stretched from New York to Miami. We find no error in the admission of this very general background information
 
 
 [5]
 The sentencing guidelines provide that only the government can initiate a downward departure on the basis of substantial assistance. See U.S.S.G. § 5K1.1
 
 
 [6]
 The government argues strenuously that the closing remarks were an allowable response to the defendants' attacks on the credibility of the government's witnesses. However, defense counsel quite properly argued that the government witnesses had a powerful incentive to lie in order to obtain a reduction in their sentences for assisting the government. This sort of argument is not an assertion of counsel's personal opinion on the witnesses' credibility, and it in no way "invites" a prosecutor to give his opinion on credibility
 
 
 [7]
 Section 851 was enacted prior to the advent of the sentencing guidelines. The Guidelines have formalized the sentencing process to a great degree, particularly in the area of the resolution of disputed sentencing factors. See generally U.S.S.G. Ch.6, Part A