**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Arthur Frank HARRISON, Jr., Defendant–Appellant.**

**No. 93–5494.**

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1994.

Decided Oct. 5, 1994.

---

lee. **ON BRIEF:** J. Douglas McCullough, U.S. Atty., Raleigh, NC, for appellee.

Before WILKINS and HAMILTON, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part and vacated and remanded in part by published opinion. Judge WILKINS wrote the opinion, in which Judge HAMILTON and District Judge ELLIS joined.

## OPINION

WILKINS, Circuit Judge:

Arthur Frank Harrison, Jr. was convicted of numerous firearms offenses. He appeals his convictions, arguing that the district court erred in refusing to instruct the jury on entrapment; that the evidence was insufficient to support his conviction for transferring firearms with knowledge that they would be used to commit a drug-trafficking crime in violation of 18 U.S.C.A. § 924(h) (West Supp.1994); that the Government improperly cross-examined his character witnesses with guilt-assuming hypotheticals; and that the district court erred in admitting evidence of dissimilar and unrelated misconduct. Harrison also challenges his sentence, asserting that the district court erred in departing upward. Finding no prejudicial error, we affirm Harrison's convictions. However, because the district court erred in departing upward when sentencing Harrison for violating 18 U.S.C.A. § 924(h) on the basis that he transferred weapons with knowledge that they would be used to commit a drug-trafficking crime, we vacate the sentence imposed for this conviction and remand for resentencing.

I.

Viewed in the light most favorable to the Government, the evidence presented at trial demonstrated the following. After receiving information that Harrison was selling firearms without a license, Special Agent West of the Bureau of Alcohol, Tobacco, and Firearms began an undercover operation directed

**ARGUED:** Jeffrey Lee Miller, Greenville, NC, for appellant. Christine Blaise Hamilton, Asst. U.S. Atty., Raleigh, NC, for appel-

at Harrison. On December 6, 1990, West went to Harrison's residence accompanied by a confidential informant who knew Harrison. Upon entering Harrison's residence, West noticed a number of firearms displayed on a table. The informant advised Harrison that West was a narcotics dealer who wanted to purchase firearms for use in the drug trade, and Harrison immediately began providing West with the prices for the firearms on the table. West purchased a Smith & Wesson 9mm pistol and advised Harrison that he would purchase two TEC–9s if Harrison could have them converted to fully automatic weapons. Harrison indicated that he could do so.

During January and February 1991, West purchased two .25 caliber semi-automatic pistols, a sawed-off Stevens shotgun, a .22 caliber pistol, another sawed-off shotgun, and a .22 magnum derringer from Harrison. On one occasion, West inquired whether Harrison was able to obtain hand grenades. Harrison stated that he could procure them and justified the price he would charge by saying that they were difficult to obtain, but that if "you had someone you wanted to get rid of, you put it in his car, and he's gone." In a later meeting, West explained to Harrison that he was planning to travel "down South" to meet individuals who were interested in exchanging firearms for cocaine and that they would desire weapons that could fire multiple rounds of ammunition. Harrison responded that he had located an Uzi that could operate as a machine gun. In other discussions concerning conversion of Harrison's TEC–9s for exchange "down South," Harrison asked West what the weapons would bring. West answered that the exchange would involve "weapon[s] for drugs."

In several telephone conversations during late June and early July 1991, West arranged to examine the Uzi and a Sten gun Harrison had located. As a result of these conversations, West and another agent went to Harrison's home where Harrison produced the Uzi and explained its operation. West tested the weapon and handed it to the other agent, who placed it on the porch beside them. Soon afterward, Harrison left to obtain the Sten gun, locking the front door to his house

and leaving the two agents sitting on his porch with the Uzi. When Harrison returned with the Sten gun, he handed the weapon to West, and the men agreed on a package price for the two weapons.

West had previously decided that he would not actually pay Harrison for these weapons, but would bring the undercover operation to an end when the Uzi and Sten gun were produced. Consequently, after agreeing on a price for the weapons, West maneuvered Harrison into the house so that other officers could approach it safely, leaving the weapons on the porch. Once inside, Harrison queried West concerning what the weapons would bring in Florida. West replied that he would probably be able to trade the Sten gun for approximately $2,000 worth of cocaine. The agents then advised Harrison of their true identity and executed a search warrant.

Harrison was indicted in October 1992 of engaging in the business of dealing in firearms in violation of 18 U.S.C.A. § 922(a)(1)(A) (West Supp.1994) (Counts 1, 2, 6, 7, and 12); possession of a sawed-off shotgun in violation of 26 U.S.C.A. § 5861(c), (d) (West 1989) (Counts 3, 4, and 5); possession of a machine gun in violation of 18 U.S.C.A. § 922(o) (West Supp.1994) (Counts 8 and 9); and transferring firearms with knowledge that they would be used to commit a drug-trafficking crime in violation of 18 U.S.C.A. § 924(h) (West Supp.1994) (Count 10). During the trial, Harrison testified that before his dealings with West he had never owned or sold an automatic weapon or a sawed-off shotgun. He maintained that the reason he sold weapons to West was that the informant who had introduced them had pleaded with him to do so.

During the charge conference, Harrison requested that the district court instruct the jury on entrapment. The district judge declined to do so, ruling that the evidence was insufficient to support the requested charge. The jury convicted Harrison of Counts 3–10 and 12.

Although Harrison was sentenced in May 1993, because amendments to the sentencing guidelines since the date of Harrison's offense had increased the applicable offense level, the district court correctly applied the

1990 *Guidelines Manual,* which was in effect when Harrison committed the offenses.[1] *See United States v. Morrow,* 925 F.2d 779, 782 (4th Cir.1991). The district court determined that U.S.S.G. §§ 2K2.1, 2K2.2 applied to Harrison's convictions. Applying the guideline that produced the greatest offense level, the district court determined that Harrison's base offense level was 18. *See* U.S.S.G. § 2K2.2(a)(1). To this offense level the district court added 3 levels based on the number of firearms involved, *see* U.S.S.G. § 2K2.2(b)(1)(C), and 2 levels because at least one of the firearms was stolen, *see* U.S.S.G. § 2K2.2(b)(2), resulting in an adjusted offense level of 23. Combined with Harrison's Criminal History Category I, the resulting sentencing range was 46–57 months imprisonment.

The Government requested that the district court depart upward under U.S.S.G. § 5K2.6 (Policy Statement), arguing that the departure was warranted because machine guns were involved and because Harrison had evinced a "callous disregard" that the weapons would be used to kill people. The court stated:

> I believe that the departure is warranted because of the grounds represented by the Government, that the defendant did have knowledge that these weapons would be used or intended for use by people in drug trafficking, and have made representations about the grenades and automatic weapons and other weapons of mass destruction that would be available or could be available to drug traffickers. I don't think that can, in 924(h), had been integrated into the guideline sentencing. It ought to be.
>
> I'm going to depart four levels from the 23 to a 27 category for the guideline range for sentencing....
>
> ....
>
> I find that the circumstances that I have recited here factually are aggravating and that they were not taken into account by the guideline. So on Count 10, I'm going to increase the guideline range to a level 27, which is 70 to 87 months.

The court then sentenced Harrison to 75 months on Count 10, concurrent with 57–month sentences on the remaining Counts; three years of supervised release; and a $2,500 fine. Harrison now appeals his conviction and sentence.

## II.

### A.

■ Harrison attacks his convictions on several bases. First, he claims that the district court erred in failing to instruct the jury on entrapment. A defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States,* 485 U.S. 58, 62, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Id.* at 63, 108 S.Ct. at 886. While the question of whether a defendant has been entrapped is generally one for the jury, *id.,* when government agents merely offer an opportunity to commit the crime and the defendant promptly avails himself of that opportunity, an entrapment instruction is not warranted, *see Jacobson v. United States,* — U.S. —, —, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992).

■ The evidence established that during their first meeting, Harrison began giving West the prices for the firearms on display immediately upon being advised that West was interested in purchasing weapons. Indeed, during their first meeting, West purchased a Smith & Wesson 9mm pistol from Harrison. Harrison's ready response to the opportunity provided by the Government to violate the law clearly demonstrated his predisposition to commit the offenses. The district court was correct in concluding that the evidence failed to support a jury instruction on entrapment.

---

1. Accordingly, all citations to the sentencing guidelines contained in this opinion reference

United States Sentencing Commission, *Guidelines Manual* (Nov.1990).

### B.

■ Harrison next argues that the evidence is insufficient to support his conviction of violating 18 U.S.C.A. § 924(h) because there was insufficient evidence that he "transferred" the Uzi and Sten gun within the meaning of that statute. Section 924 does not define the term "transfers," and Harrison asserts that "transfers" should be given the same meaning it has been given in 26 U.S.C.A. § 5845(j) (West 1989). This provision of the National Firearms Act defines the term "transfers" to mean "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of." *Id.* Harrison maintains that because the evidence was insufficient to support a finding that the sale of the Uzi and the Sten gun was complete, he did not "transfer" the weapons.

The only court of appeals to have considered whether the term "transfers" should be defined for purposes of § 924(h) as it is in § 5845(j) has rejected this construction, reasoning that because the purpose of the Anti–Drug Abuse Act of 1988, which adopted the provision now codified at § 924(h), is broader than the purpose of the National Firearms Act, Congress did not intend for the terms to have the same meaning. *See United States v. Callaway,* 938 F.2d 907, 909 (8th Cir.1991). We agree with the reasoning of the *Callaway* court and conclude that the transfer element of § 924(h) should not be construed to have the same meaning as it does in § 5845. Rather, we conclude that the term "transfer" should be given its ordinary meaning, *see Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990)— *i.e.,* to turn over possession or control, *The Random House College Dictionary* 1395 (rev. ed.1980).

■ The evidence established that West had purchased a number of weapons from Harrison, that Harrison had acquired the Uzi and the Sten gun believing that West would be interested in purchasing them, that they had agreed on a price for these weapons, and that Harrison had surrendered physical possession of them to West. Although Harrison locked his house when he went to obtain the Sten gun, he left the Uzi on the porch with the agents. And, when Harrison returned with the Sten gun, he handed the weapon to West. Finally, upon entering the house after the men reached an agreement regarding the purchase of the weapons, Harrison inquired about the price these types of weapons would bring in Florida, the destination to which West had told Harrison he would be taking them. Viewed in the light most favorable to the Government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), this evidence is sufficient to support a jury finding that Harrison transferred the firearms to West within the meaning of § 924(h).

### C.

■ Relying on *United States v. Mason,* 993 F.2d 406 (4th Cir.1993), Harrison argues that the Government improperly cross-examined his character witnesses. In *Mason* we held that Government cross-examination of a defendant's character witnesses with guilt-assuming hypotheticals constituted reversible error. *Id.* Although the Government asked one of Harrison's character witnesses whether his good opinion of Harrison would change if he knew that Harrison had committed the offenses for which he was charged, the district court sustained Harrison's objection to this question. Moreover, even if we were to conclude that the cross-examination included improper questions, the error would be harmless in light of the overwhelming evidence of guilt against Harrison. *Cf. id.* at 409 (error in Government's posing guilt-assuming hypotheticals not harmless when only evidence of defendant's guilt was from paid informant and was not corroborated by audio tape recordings of the transactions).[2]

---

2. Harrison also argues that the district court committed reversible error in admitting evidence of unrelated misconduct concerning his involvement with marijuana distribution and a stolen firearm recovered during the search of his home and that evidence offered by the Government in rebuttal was improper. We conclude that even if the district court erred in admitting this evidence, in view of the overwhelming evidence of Harrison's guilt presented in audio tape recordings of the transactions and the testimony of the agents involved in the undercover operation, any error was harmless. *See* Fed.R.Crim.P. 52(a).

## III.

■ Harrison also contends that the district court committed numerous errors in sentencing him, principally maintaining that the district court erred in departing upward. In reviewing the decision of the district court to depart, this court first reviews de novo the specific reasons relied upon by the district court in support of its departure to determine whether they were "adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *United States v. Hummer,* 916 F.2d 186, 192 (4th Cir.1990) (internal quotation marks omitted), *cert. denied,* 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991).

■ The district court indicated that it found upward departure warranted because in transferring the weapons Harrison knew that they "would be used or intended for use by people in drug trafficking" and because the transactions involved automatic weapons and representations about hand grenades. The decision of the district court that the Commission failed to adequately consider that a defendant may transfer a weapon with knowledge that it will be used to commit a drug-trafficking crime stemmed from the misconception of the district court that the Commission had failed to promulgate a guideline governing violations of 18 U.S.C.A. § 924(h).[3] In fact, such a guideline did exist—U.S.S.G. § 2K2.3, entitled "Receiving, Transporting, Shipping or Transferring a Firearm or Ammunition With Intent to Commit Another Offense, or With Knowledge that It Will Be Used in Committing Another Offense."[4] The title of that guideline makes plain that the Commission *did* adequately consider the fact that a defendant may transfer a weapon with knowledge that it will be used to commit a drug-trafficking offense in formulating the guideline. Moreover, the cross-reference to § 2X1.1 contained in § 2K2.3 provides for possible enhancement of the sentence when a firearm is transferred by a defendant who knows that the weapon will be used to commit another offense, demonstrating that the Commission recognized that this situation may occur. Thus, we conclude that in promulgating § 2K2.3 the Commission adequately considered this factor. Accordingly, the fact that Harrison transferred the firearms believing that they would be used by individuals to commit a drug-trafficking crime does not support the decision of the district court to depart upward. *See Hummer,* 916 F.2d at 192. Because we cannot conclude that the district court would have imposed the same sentence in the absence of this basis for departure, we must remand for resentencing.[5] *See Williams v. United States,* — U.S. —, — – —, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992).[6]

---

3. The Government represented to the district court that reference to Appendix A of the 1990 *Guidelines Manual,* containing an index of guidelines ordinarily applicable to statutes of conviction, disclosed that a guideline for § 924*(h)* violations had not been promulgated. While Appendix A failed to reference § 924(h), it did designate § 2K2.3 as the guideline applicable to § 924*(g)* violations. After the 1990 version of the *Guidelines Manual* was published, Congress amended § 924 by redesignating § 924(g) as § 924(h). *See* 18 U.S.C.A. § 924 note (West Supp.1994). Thus, § 2K2.3 was intended to apply to Harrison's § 924*(h)* conviction for transferring firearms with knowledge that they would be used to commit a drug-trafficking crime.

4. Section 2K2.3 instructs that the court should determine a defendant's offense level by applying the greater of:
     (1) The offense level from § 2X1.1 (Attempts, Solicitation, or Conspiracy) in respect to the offense that the defendant intended or knew was to be committed with the firearm; or
     (2) The offense level from § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition), or § 2K2.2 (Unlawful Trafficking and Other Prohibited Transactions Involving Firearms) as applicable; or
     (3) 12.

5. The district court should apply U.S.S.G. § 2K2.3, the guideline applicable to Harrison's § 924(h) conviction, at resentencing. We express no opinion concerning the proper application of this guideline to Harrison's conduct or to the appropriateness of departure from it.

6. Harrison's remaining allegations of sentencing error are without merit. The findings of the district court with respect to the number of firearms and the stolen firearm attributed to Harrison are not clearly erroneous. *See United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989) (directing appellate court to apply a clearly erroneous standard of review to factual findings by the district court in sentencing). Moreover, Harrison's argument that the firearms referenced in

IV.

In sum, because no prejudicial error tainted Harrison's convictions, they are affirmed. However, because the district court erred in departing upward on the basis that Harrison transferred weapons with knowledge that they would be used to commit a drug-trafficking crime, we vacate Harrison's sentence for Count 10 and remand for resentencing under the appropriate guideline.

*AFFIRMED IN PART; VACATED AND REMANDED IN PART.*

Counts 1 and 2 should not be included because he was acquitted of those Counts lacks merit. *See United States v. Romulus,* 949 F.2d 713, 716– 17 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1690, 118 L.Ed.2d 403 (1992).