72 F.3d 128
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John Louis TEITLOFF, Defendant-Appellant.
 No. 94-5823.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 24, 1995.
Decided Dec. 18, 1995.
 
 Gordon Widenhouse, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Janice McKenzie Cole, United States Attorney, Peter W. Kellen, Assistant United States Attorney, Steven R. Matheny, Special Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 Before MURNAGHAN, WILKINS, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 John Teitloff was convicted by a jury of unauthorized use of a credit card, 18 U.S.C.A. Sec. 1029(a) (West Supp.1995), and was sentenced to a term of thirty-three months. He appeals his conviction, contending that the district court abused its discretion in admitting evidence of the victim's financial habits. Fed.R.Evid. 406. He also appeals his sentence, arguing that the district court erred in finding that he had targeted a vulnerable victim, USSG Sec. 3A1.1,* and that he had obstructed justice by perjuring himself at trial. USSG Sec. 3C1.1. We affirm.
 
 
 2
 In November 1992, John Teitloff was one of three people employed by Paul Woodson's family to assist Woodson for a few days in the hospital following an operation. After Woodson left the hospital, Teitloff continued to assist him at his home for three days, again taking one of three shifts. After Christmas, Woodson's son discovered that his father's Wachovia Bank Visa card had been used in late November to make withdrawals totalling $4,400 from automatic teller machines (ATM's). Video tapes from the ATM's showed Teitloff making the withdrawals.
 
 
 3
 When Teitloff was confronted by Secret Service agents in March 1993, he made a voluntary statement admitting that he stole the card from Paul Woodson, used it a number of times, and then threw it away. Paul Woodson died in April 1993, and Teitloff subsequently pled not guilty and went to trial, asserting that Woodson had given him permission to use the card to finance his nursing degree. He said the ATM withdrawals were a loan which Woodson intended to keep secret from his son.
 
 
 4
 James Woodson, the victim's son, testified during the government's case-in-chief that he had been receiving his father's mail for some time before his father's death, and that his father had never used the credit card. On cross-examination, defense counsel established that the victim "was very private in his financial affairs," and had never told his son that he had a credit card, or revealed his ownership of other assets.
 
 
 5
 On redirect, the government asked James Woodson whether he had knowledge of his father's spending habits. Defense counsel objected to this testimony on relevance grounds, but the district court allowed it. The court held that, because Teitloff's opening statement asserted that Paul Woodson had given him permission to use the card, the government was entitled to show whether Paul Woodson had been "a tightwad" or generous with his money. James Woodson testified that his father had learned during the Depression to be extremely frugal and had never been generous even with family members, although he did give to his church and to charity. James Woodson testified that he had always known his father to pay cash, buy cheap gasoline for his car, and give inexpensive gifts to family members.
 
 
 6
 Questions concerning the admission of evidence are reviewed under an abuse of discretion standard. United States v. D'Anjou, 16 F.3d 604, 610 (4th Cir.), cert. denied, 62 U.S.L.W. 3861 (U.S.1993). Although it was offered as habit evidence, Teitloff contends that the evidence elicited from James Woodson during redirect examination was evidence of character which was inadmissible under Rule 404(a). The government counters that Rule 404(a)(2) permits evidence of "a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same." The government argues convincingly that Teitloff placed two traits of Paul Woodson's character in issue through his opening statement and cross-examination of James Woodson, namely, his financial conservatism and financial secretiveness. The record bears out this assertion. Thus, even if the evidence was, in part, character evidence, the district court did not abuse its discretion in admitting it.
 
 
 7
 Teitloff concedes that habit evidence is admissible but argues that James Woodson's testimony concerning his father's financial habits did not meet the requirements for habit evidence under Fed.R.Evid.
 
 
 8
 406. Examples provided to establish habit or a pattern of conduct must be " 'numerous enough' " to establish a " 'regular response to a repeated specific situation.' " Wilson v. Volkswagon of Am., 561 F.2d 494, 511 (4th Cir.1977) (footnotes omitted), cert. denied, 434 U.S. 1020 (1978). Teitloff maintains that Paul Woodson developed a great affection for him during the six days Teitloff assisted in caring for him, and that the examples given by James Woodson were not adequate to predict his behavior when a person to whom he showed great affection needed money for an important purpose.
 
 
 9
 James Woodson's testimony about his father's lifelong propensity to spend as little as possible in all circumstances was less than scientific, but it was sufficient to establish Paul Woodson's regular response to situations calling for him to choose whether to part voluntarily with his money or to keep it. Therefore, the district court did not abuse its discretion in admitting this evidence. Moreover, even if admission of the evidence was error, it was harmless error, given Teitloff's admission of guilt prior to Paul Woodson's death. See United States v. Mason, 993 F.2d 406, 409 (4th Cir.1993) (error not affecting substantial rights not ground for reversal).
 
 
 10
 Teitloff challenges the district court's findings, at sentencing, that Paul Woodson was a vulnerable victim and that Teitloff lied when he testified that Woodson had given him permission to use the credit card. Each finding increased the length of Teitloff's sentence.
 
 
 11
 The vulnerable victim adjustment applies if a victim was "unusually vulnerable due to age, physical or mental condition, or ... was otherwise particularly susceptible to the criminal conduct." USSG Sec. 3A1.1. The defendant must have targeted the victim specifically because of his unusual vulnerability. United States v. Holmes, 60 F.3d 1134, 1136 (4th Cir.1995).
 
 
 12
 Teitloff first argues that Paul Woodson was not unusually vulnerable to having his credit card stolen. He correctly asserts that the enhancement does not apply if some characteristic of the victim merely makes the crime possible or easier for the defendant to commit. See United States v. Wilson, 913 F.2d 136, 138 (4th Cir.1990) (residents of town hit by tornado not unusually vulnerable to fraudulent request for disaster relief); United States v. Moree, 897 F.2d 1329, 1335 (5th Cir.1990) (indicted highway commissioner susceptible to defendant's offer to "fix" indictment, but not unusually vulnerable because health and age not factors).
 
 
 13
 But Woodson's old age and poor health were factors in Teitloff's theft and are qualities identified in the guideline as those which may make a victim unusually vulnerable. James Woodson testified that his father was a careful and successful businessman who had been forced to turn over some of his personal affairs to his son because of his health. Although mentally competent, Woodson had to stay in bed during the time Teitloff was in his house, leaving Teitloff free to move about the house unobserved. Woodson's condition thus made him unusually vulnerable to Teitloff's criminal act.
 
 
 14
 Second, Teitloff argues that, even if Woodson was unusually vulnerable, he did not target Woodson because of his vulnerability but merely took advantage of the opportunity that was offered. He points out that he did not volunteer to work at Woodson's home. Teitloff interprets the phrase "the victim is made a target" as meaning that the adjustment would not apply unless he had taken the nursing job primarily so that he could steal from Woodson.
 
 
 15
 Teitloff misinterprets the guideline and our previous decisions. The victim's vulnerability must "play a role in the defendant's decision to select that victim as the target of the crime." United States v. Singh, 54 F.3d 1182, 1191 (4th Cir.1995). Conversely, the adjustment does not apply if the defendant does not begin to take advantage of the victim's vulnerability until the crime is under way. Id. (citing United States v. Gary, 18 F.3d 1123, 1128-29 (4th Cir.), cert. denied, 63 U.S.L.W. 3260 (U.S.1994)). In this case, Teitloff knew of Woodson's vulnerability before he committed the theft, and a preponderance of the evidence indicates that it was a factor in Teitloff's decision to steal the credit card from him. Consequently, the district court did not clearly err in making the adjustment for a vulnerable victim.
 
 
 16
 Finally, we find that the district court's finding concerning obstruction of justice was adequate. The adjustment may be given if the district court finds that the defendant committed perjury in his trial testimony, that is, that he intentionally lied about a material matter.
 
 
 17
 United States v. Dunnigan, 61 U.S.L.W. 4180, 4183 (U.S. Feb. 23, 1993) (No. 91-1300). Rather than make a specific finding on each of these elements of perjury, the court may make a finding which encompasses them all. Id.; United States v. Castner, 50 F.3d 1267, 1279 (4th Cir.1995). The district court found that Teitloff lied when he testified that Woodson gave him permission to use the credit card. This finding was sufficient to permit the adjustment under Dunnigan.
 
 
 18
 We therefore affirm the conviction and the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 United States Sentencing Commission, Guidelines Manual (Nov.1993)