**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5885

AUBREY MOORE, III,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-94-115)

Argued: June 7, 1996

Decided: August 12, 1996

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
CURRIE, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Hunt Lee Charach, Federal Public Defender, Charleston,
West Virginia, for Appellant. Paul Thomas Camilletti, Assistant
United States Attorney, Wheeling, West Virginia, for Appellee. **ON
BRIEF:** C. Cooper Fulton, Assistant Federal Public Defender,
Charleston, West Virginia, for Appellant. William D. Wilmoth,
United States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Aubrey Moore, III, pled guilty to transferring a firearm, knowing that it would be used to commit a drug trafficking crime, in violation of 18 U.S.C. § 924(h), and was sentenced to 21 months imprisonment. On appeal, Moore argues that because his mistaken belief that the guns he sold to undercover government agents would be used in drug trafficking does not establish the knowledge required by § 924(h), the district court erred in accepting his guilty plea. He further contends that the district court illegally enhanced his sentence based on guns that he sold to undercover government agents after offering to cooperate in their sting operation because the government agents engaged in "sentencing manipulation" by continuing to purchase firearms from him. Finding Moore's arguments meritless, we affirm.

I

After arresting an underage individual for possession of a handgun which the individual had illegally purchased from Moore, Detective Steve Cain of the Fairmont (West Virginia) Police Department referred the investigation to Special Agent Kent Hallsten of the Federal Bureau of Alcohol, Tobacco and Firearms. Detective Cain's referral indicated that Moore, a federally licensed firearms dealer, was suspected of (1) selling firearms to a person less than 21 years old and (2) selling firearms at a premise other than his father's Fairmont residence, the only location permitted by his federal license.

Special Agent Hallsten recruited the juvenile as a confidential informant and directed his participation in several controlled handgun purchases from Moore. The juvenile bought one handgun from Moore on November 12, 1993, and two more on November 23, 1993. Both purchases occurred at Moore's own Fairmont residence.

2

On December 2, 1993, the juvenile informant introduced Agent Hallsten, acting undercover, to Moore. Hallsten told Moore that he wished to buy machine guns, and Moore said that he could make a machine gun. Agent Hallsten then informed Moore that he had sold the two handguns the informant had purchased from Moore on November 23 to individuals in Pittsburgh. When Moore indicated that "he dealt with some black individuals" in Pittsburgh, Hallsten responded that he was "probably dealing with the same type of individuals." Finally, Hallsten stated that he wished to buy two more handguns from Moore.

Agent Hallsten met with Moore again on December 9, 1993, to see if Moore had the two handguns that he had ordered. Moore said that the guns were at his father's house but that Hallsten could pick them up later that day. When Agent Hallsten returned about an hour later, Moore, who had retrieved the guns, delivered them to Hallsten. According to his later testimony, Hallsten informed Moore during their first meeting on December 9 that he would be trading the handguns for drugs in Pittsburgh. But according to Moore's account, Hallsten did not mention that he intended to use the guns in drug trafficking until after Moore had delivered them, and Moore responded that he "didn't want to know what [Hallsten] was going to do with them."

On December 16, 1993, Agent Hallsten obtained three more handguns from Moore, and Moore telephoned Detective Cain, offering to assist the police in apprehending Hallsten and the confidential informant. During another call to Cain on December 17, Moore stated that "he had to do something" because a white man named "Kent" (who was, in fact, Agent Hallsten) and a black man (who was, in fact, the juvenile informant) were "pushing him for machine guns." Detective Cain told Moore that he would get back to him in a few days after talking with his chief and advised Moore not to do anything illegal. In response to Moore's inquiry whether "the feds were trying to set him up," Cain said that he did not know. Detective Cain reported Moore's calls to Agent Hallsten, who believed that Moore had provided inaccurate information.

Detective Cain called Moore twice in late December 1993, again admonishing him not to violate any state or federal laws. During the

3

second conversation, Cain invited Moore to come in to sign a written statement as to the information that he had previously provided over the telephone. Although Moore indicated that he might sign such a statement, he never did.

After December 29, 1993, Moore made no more reports to Detective Cain even though Agent Hallsten and the juvenile informant continued to call and solicit Moore for firearms, including machine guns. The undercover agents bought two more handguns from Moore, one on February 25 and another on March 28, 1994. Moore had advance notice of both sales but did not contact Detective Cain either before or after making them.

Moore and his father were charged in a 20-count indictment with various offenses relating to the sale of firearms. Pursuant to a plea agreement, Moore pled guilty to transferring a firearm, knowing that it would be used to commit a drug trafficking offense, in violation of 18 U.S.C. § 924(h), for his handgun sales to undercover Agent Hallsten on December 9, 1993. The district court deferred acceptance of Moore's plea pending its review of his presentence report.

Moore's presentence report recommended that his sentence be enhanced three levels under U.S.S.G. § 2K2.1(b)(1)(C) because eleven firearms had been involved in his relevant conduct, and four levels under U.S.S.G. § 2K2.2(b)(5) because Moore had known that the firearms he had sold would be used in connection with a drug trafficking crime. Moore objected to the report, contending first that he should not be held accountable for the five guns he had sold after telephoning Detective Cain on December 16, 1993, because he had believed from that date on that he was cooperating with the police to apprehend "Kent" and the juvenile confidential informant. Moore further argued that his sentence should not be enhanced for knowing the firearms he sold would be used in drug trafficking because the government had impermissibly attempted to manipulate his sentence by mentioning drugs only <u>after</u> he had delivered the handguns to Hallsten. In response to the government's argument that Moore's guilty plea precluded him from arguing his lack of knowledge about the use of the handguns, Moore's counsel conceded at the sentencing hearing that Moore's plea had been voluntary but insisted that "at the time

4

that plea was made it was made with the understanding that there was a sentencing manipulation here."

In sentencing Moore, the district court applied both enhancements. The court determined that Moore's relevant conduct involved eleven firearms, observing that "even after Mr. Moore contacted . . . Steve Cain, he continued to sell to the confidential informant and to Agent Hallsten" and "Agent Hallsten's testimony that[Moore] provided inaccurate and misleading information to Detective Cain [went] unrebutted." In response to Moore's objection concerning his knowledge of the use of the guns he had sold, the court first decided "as a matter of law that the Fourth Circuit would not adopt the theory of sentencing manipulation in any case." Even if adopted, however, the court concluded that the theory would not apply to Moore's case because of Moore's

> pattern of trading with the confidential informant and Agent Hallsten . . . with the kinds of guns that were being bought, not just the machine guns but the handguns which are typically used in drug transactions, with the fact that the defendant questions his record keeping, but the fact that he knew the guns were going out of state to be sold in Pittsburgh, Pennsylvania, and with the fact that even after he heard the agent say that the guns were going to be traded for drugs, whether that was as the agent was walking out the door on the 9th or whether it was in the course of a fuller conversation, he continued to sell guns to this agent and to the confidential informant who had a relationship with this agent.

After the district court so resolved the sentencing issues, Moore persisted in tendering his guilty plea, and the court accepted it. The court then sentenced Moore to 21 months imprisonment, the minimum under the applicable guideline range.

This appeal followed.

II

On appeal, Moore argues first that the district court erred in accepting his guilty plea because he did not have the mens rea required by

5

18 U.S.C. § 924(h). While conceding that Agent Hallsten had told him that he intended to trade the handguns he was purchasing for drugs, Moore maintains that he could not have known that the firearms would be so used because in fact they never would be so used. And mistaken belief, Moore submits, does not constitute knowledge for purposes of § 924(h).

Because Moore voluntarily pled guilty and does not seek to withdraw his plea, his challenge to his § 924(h) conviction is not cognizable on appeal. As we explained in United States v. Willis, 992 F.2d 489, 490 (4th Cir.), cert. denied, 510 U.S. 857 (1993), a valid guilty plea waives a defendant's right to challenge the legal or factual basis for his conviction.

Even if preserved, Moore's argument is untenable. In essence, Moore's defense amounts to a claim of factual impossibility: Because the guns he sold never would actually be used in a drug crime, he could not have known that they would be used in a drug crime. In United States v. Barton, 32 F.3d 61, 67 (4th Cir. 1994), however, we recognized that courts routinely reject factual impossibility defenses absent a strong indication of congressional intent to allow them, and 18 U.S.C. § 924(h) does not evince such a clear purpose. Thus, we affirmed the defendant's § 924(h) conviction in United States v. Harrison, 37 F.3d 133, 137 (4th Cir. 1994), even though he had sold guns only to undercover government agents. Furthermore, because one can never have actual knowledge about future events, Moore's understanding in this case about the use of the handguns he sold is the same understanding that he would have acquired from a purchaser who truly intended to use the guns in drug trafficking.

III

Moore also contends that the district court mistakenly attributed to him eleven guns, rather than six, and, therefore, erroneously enhanced his sentence three levels, rather than two. Moore maintains that the government committed "sentencing manipulation" by continuing to engage in controlled gun purchases with him after he had offered his cooperation to Fairmont Detective Steve Cain on December 16, 1993. According to Moore, he was operating under the subjective but mistaken belief that he was assisting the police in a sting operation when

6

he sold the five guns to undercover government agents on and after December 16.

This court has not decided whether sentencing manipulation can ever justify a downward departure but did observe in United States v. Jones, 18 F.3d 1145, 1154 (4th Cir. 1994), that, if recognized, the theory would require proof of "outrageous government conduct." Such conduct has not been presented in this case. Although Detective Cain told Moore to stall the would-be machine gun purchasers, he also repeatedly told Moore not to do anything illegal. Moreover, Detective Cain never arranged for Moore to cooperate with police, but merely told Moore that he would get back to him concerning his offer to cooperate. For his part, Moore provided inaccurate information to Detective Cain; he never took up Cain's offer to come in and sign a statement concerning the information he had provided over the telephone; and after December 29, he failed to report any of his transactions with Agent Hallsten or the confidential informant, including the continuing discussions about machine guns and the two final handgun sales.

Accordingly, we affirm the judgment of the district court.

AFFIRMED

7