**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

ALTON F. BIVINS, JR.,
  *Defendant-Appellant.*

No. 03-4743

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-00-604)

Argued: June 4, 2004

Decided: July 26, 2004

Before WILKINSON, LUTTIG, and MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Christopher Belcher, Oxon Hill, Maryland, for Appellant. Deborah A. Johnston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Chan Park, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Alton F. Bivins, Jr. was convicted on federal charges of conspiracy to commit money laundering, engaging in monetary transactions in property derived from criminal activity, and wire fraud. Bivins appeals, arguing that his convictions should be overturned because his indictment was defective and because the evidence was insufficient. In the alternative, he argues that he is entitled to a new trial because of various evidentiary errors and faulty jury instructions. We affirm.

### I.

The indictment, returned on December 20, 2000, charged Bivins with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); four counts of engaging in monetary transactions in property derived from criminal activity in violation of 18 U.S.C. § 1957(a); and six counts of wire fraud in violation of 18 U.S.C. § 1343.

Trial began on February 3, 2003, and the government presented the following evidence. Donald Osorio (Osorio) and Karen Bivins (Karen) were involved in a conspiracy to import and distribute cocaine and heroin. Karen was the sister of Alton Bivins (Bivins), the defendant in this case. During the height of the conspiracy, Osorio was buying and selling fifteen kilograms of cocaine a week and turning a profit of approximately $11,000 on each kilogram. Karen was Osorio's "right hand person." J.A. 101. She stored drugs in her home and helped organize drug pickups and deliveries. Karen was also responsible for managing and investing the money Osorio acquired through his drug dealing operation. Around 1995 Karen advised Osorio that he should invest his drug proceeds in real estate. Soon thereafter, Karen used drug funds to buy a neighborhood grocery store that served as a front for Osorio's drug dealing activities. A law

enforcement officer described the store as "bare," "without a lot of product in it." S.J.A. 7-8. Karen also used Osorio's drug funds to set up a loan corporation called the Mortgage Corporation of Maryland (MCM). Osorio's drug proceeds were used to pay for MCM's office space, furniture, phone lines, and advertising. According to Osorio, "Karen and her brother were going to do the loans of that office." J.A. 154. From 1995-1997 Osorio used MCM to obtain loans in several real estate transactions.

During the time of Osorio and Karen's ongoing drug distribution conspiracy, Bivins was employed as a mortgage loan officer at MCM. In this role Bivins was responsible for soliciting loans from lenders and completing loan applications. The applications required him to submit information regarding an applicant's wages, residence, and employment status. Between 1995 and 1997 Bivins served as the loan officer in six real estate transactions involving the purchase or sale of property by Osorio. In each of these transactions, Bivins falsified portions of Osorio's loan application. Specifically, Bivins provided lenders with false information about Osorio, including false W-2 forms, false pay stubs, and false information about his place of employment and current residence. In two of the transactions, Bivins used the alias "Jose Soto" to hide the fact that Osorio was involved in the purchase or sale of property. All of these real estate transactions were consummated by the use of proceeds derived from Osorio's drug operation.

Bivins testified in his own defense. He admitted that he knowingly and willfully submitted false loan applications and false documentation for Osorio. However, he claimed to have no knowledge that either Osorio or Karen were engaged in drug distribution or that the funds used to buy the real estate were derived from drug dealing. According to Bivins, he "didn't know [Osorio] did not have any legitimate source of income. . . . [He] only knew that it was not derived from the source stated on the application." S.J.A. 151. Bivins said he believed Osorio would repay all of the mortgage loans with proceeds from the grocery store, which Bivins had visited "a couple of times." J.A. 405. Bivins admitted, however, that he had never requested to see any financial statements from the store.

At the close of the evidence, Bivins moved for a judgment of acquittal, arguing that the government had not introduced any evi-

dence showing that he knew that Osorio was a drug dealer or that he knew Osorio was using money derived from criminal activity. The motion was denied, and the case was submitted to the jury. On February 13, 2003, the jury convicted Bivins on all counts. Bivins now appeals.

## II.

Bivens raises five issues: (1) that the indictment failed to adequately describe his alleged illegal conduct; (2) that the government relied on an improper theory of knowledge in its effort to convict him of conspiracy to commit money laundering; (3) that there was insufficient evidence to support a finding of willful blindness; (4) that certain evidence was admitted in error; and (5) that there were certain errors in the jury instructions.

## A.

Bivins first argues that counts two through five of the indictment failed to adequately describe the specific conduct with which Bivins was charged. These counts charged Bivins with violating 18 U.S.C. § 1957(a), which makes it illegal for an individual to "knowingly engage[ ] . . . in a monetary transaction in criminally derived property of a value greater than $10,000." Section 1957(f)(1) defines "monetary transaction" as "the deposit, withdrawal, transfer, or exchange . . . of funds . . . by, through, or to a financial institution . . . including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title." Bivins argues that the indictment was insufficient because it failed to inform him of the specific type of monetary transaction in which he participated, that is, whether his acts were a "deposit, withdrawal, transfer, or exchange."

An indictment is sufficient if it "(1) indicate[s] the elements of the offense and fairly inform[s] the defendant of the exact charges and (2) enable[s] the defendant to plead double jeopardy in subsequent prosecutions for the same offense." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998). Bivins's indictment easily satisfies these requirements. Counts two through five begin by tracking the language of 18 U.S.C. § 1957(a), saying that Bivins "did unlawfully, willfully, and knowingly engage . . . in a monetary transaction in criminally

derived property with a value that is greater than $10,000 and derived from specified unlawful activity, to wit, distribution and possession with intent to distribute narcotics." J.A. 18-21. Each count goes on to describe the monetary transaction as "the sale" or "the purchase" of a piece of property and includes the address of the specific property at issue. Finally, each count refers to and incorporates other relevant portions of the indictment to assist in explaining the illegal conduct charged. For example, count two provides more information about its money laundering charge by incorporating allegations from count one, specifically that Bivins "prepared and submitted . . . with false documentation" a mortgage application for property at 116 13th Street, N.E., Washington, D.C. J.A. 14, 18.

When the indictment is considered "as a whole," *United States v. American Waste Fibers Co., Inc.*, 809 F.2d 1044, 1046 (4th Cir. 1987), it is clear that Bivins was charged with violating § 1957(a) for preparing and providing false mortgage applications for specific properties, thereby facilitating the purchase and sale of real estate that derived from criminal activity. We are not sure how the government could have made the charges any clearer. The fact that the indictment did not specifically catalog the charged conduct as a "deposit, withdrawal, transfer, or exchange," *see* 18 U.S.C. § 1957(f)(1), did not render the indictment defective. *See Williams*, 152 F.3d at 299 ("failure to track the precise language of a statute does not without more, constitute error"). Accordingly, Bivins had sufficient notice of the exact charges against him, and we reject his claim to the contrary.

B.

Bivins argues second that his conviction under count one should be reversed as a matter of law because a conspiracy conviction may not be based on a willful blindness theory of criminal knowledge and intent. Essentially, Bivins contends that it is inconsistent for a jury to find that a defendant knowingly and willfully joined a conspiracy while simultaneously finding that the defendant was willfully blind to the conspiracy's objects and purposes. We disagree.

The district court instructed Bivins's jury that:

> Willful blindness exists when a defendant whose suspicion has been aroused deliberately fails to make further inquiries.

> If you find that the defendant had a strong suspicion that someone withheld important facts yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly.

J.A. 484-85. It is clear from this definition, which Bivins concedes was correct, that willful blindness is a form of constructive knowledge that "allows the jury to impute the element of knowledge to the defendant if the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him." *United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991). *See also United States v. Rodriguez*, 53 F.3d 1439, 1447 (7th Cir. 1995) ("It is well settled that willful blindness . . . is the legal equivalent to knowledge.") (internal quotation marks and citations omitted); *United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996). Because willful blindness serves as a proxy for knowledge, there is nothing inconsistent in saying that a defendant knowingly joined a conspiracy because he was willfully blind to the conspiracy's existence and purpose. Bivins has not offered any specific reason why willful blindness cannot be used in the context of conspiracy, and the case law rejects his position. Our circuit has affirmed conspiracy convictions when the district court instructed the jury on willful blindness, *see Abbas*, 74 F.3d at 513-14, and several other circuits have held that willful blindness may be used to establish knowledge of a conspiracy's purposes and objectives, *see, e.g.*, *United States v. Reyes*, 302 F.3d 48, 53-54 (2d Cir. 2002); *United States v. Lalley*, 257 F.3d 751, 755 (8th Cir. 2001); *United States v. Wert-Ruiz*, 228 F.3d 250, 255 n.3 (3d Cir. 2000). It was therefore appropriate to submit the willful blindness theory to the jury.

## C.

Bivins's third argument is that there was insufficient evidence to prove that he knowingly engaged in a monetary transaction in criminally derived property, as required under 18 U.S.C. § 1957(a). Bivins alleges that the government failed to offer any evidence showing that Bivins either actually knew that Osorio's funds were derived from criminal activities or that he was willfully blind to that fact. Although the government did not introduce any direct evidence of actual knowledge on Bivins's part, the evidence nevertheless supports a finding of willful blindness.

Section 1957(a) requires the government to prove that the defendant "knew that the [monetary] transaction involved criminally derived property." *United States v. Gabriele*, 63 F.3d 61, 65 (1st Cir. 1995). The section's knowledge element may be established by showing that a defendant was willfully blind. *United States v. Campbell*, 977 F.2d 854, 857 (4th Cir. 1992). A defendant is willfully blind if he "purposely closed his eyes to avoid knowing what was taking place around him," *Schnabel*, 939 F.2d at 203, or was "deliberate[ly] ignoran[t]," *Abbas*, 74 F.3d at 514. The record in this case supports such a finding.

The evidence established that Bivins falsified Osorio's loan applications in order to obtain real estate mortgages. These fraudulent applications included false information about Osorio's employment status, his home residence, and his various business ventures. On some of the mortgage applications, Bivins used the alias "Jose Soto" to hide the fact that Osorio was the person actually buying the property. Osorio gave testimony indicating that the mortgage company where Bivins worked, MCM, was set up by Karen for the express purpose of laundering Osorio's drug proceeds. Bivins admitted that he knowingly falsified Osorio's documents, and he could not give any legitimate reason for having done so. Furthermore, Bivins said that he believed Osorio's only legitimate source of income was a small, understocked local grocery store. But Bivins also knew that Osorio was holding a million dollars in real estate. In light of this evidence, a reasonable jury could find that Bivins was willfully blind to the fact that Osorio was buying property from funds that were derived from a criminal activity. Our circuit and others have concluded that there was sufficient evidence of willful blindness in similar circumstances. *See e.g.*, *Campbell*, 977 F.2d at 858-59; *Wert-Ruiz*, 228 F.3d at 258.

## D.

Fourth, Bivins argues that the district court erred in three separate evidentiary rulings. We review these rulings for abuse of discretion. *See Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997).

## 1.

Bivins contends that the district court erred when it permitted the government to introduce extensive evidence showing that Osorio and

Karen were engaged in a drug distribution conspiracy. Bivins stipu-
lated that Osorio and Karen were involved in such a conspiracy, and
he stipulated to summaries showing how the drug business operated.
Bivins argues that his stipulations completely established that
Osorio's funds came from criminally derived activity and that any
additional evidence tending to prove that fact was irrelevant under
Federal Rules of Evidence 401 and 402 and that its admission was
unduly prejudicial under Rule 403.

Bivins's argument under Rules 401 and 402 need not detain us
long. Rule 402 provides that "[a]ll relevant evidence is admissible
. . . . Evidence which is not relevant is not admissible." Rule 401
defines relevant evidence as that "having any tendency to make the
existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence." The Supreme Court and this circuit have both held that a
stipulation does not render evidence tending to prove the underlying
stipulation irrelevant under Fed. R. Evid. 401 or 402. *See Old Chief*,
519 U.S. at 178-79; *United States v. Dunford*, 148 F.3d 385, 394-95
(4th Cir. 1998). Therefore, if the evidence regarding Osorio and
Karen's drug conspiracy is inadmissible, it is not inadmissible
because Bivins's stipulation rendered it irrelevant. Rather, "its exclu-
sion must rest . . . on its character as unfairly prejudicial, cumulative
or the like" under Rule 403. *Old Chief*, 519 U.S. at 179.

The question of whether Rule 403 bars the admission of evidence
offered to prove stipulated facts was examined in *Old Chief v. United
States*, 519 U.S. 172. The defendant in *Old Chief* was charged with
illegal possession of a firearm by a convicted felon, in violation of 18
U.S.C. § 922(g)(1). The *Old Chief* defendant stipulated, for purposes
of trial, that he was a convicted felon within the meaning of
§ 922(g)(1). Despite the stipulation the government sought to intro-
duce court records indicating that the defendant's prior offense
involved assault causing serious bodily harm. The defendant argued
that in light of the stipulation to the prior conviction, the arrest
records were overly prejudicial under Rule 403. The Supreme Court
held that as a general matter "a criminal defendant may not stipulate
or admit his way out of the full evidentiary force of the case as the
Government chooses to present it." *Id.* at 186-87. The Court reasoned
that "the prosecution, with its burden of persuasion, needs evidentiary

depth to tell a continuous story." *Id.* at 190. In *Old Chief*, however, the Court invoked an exception to that general rule. It concluded that the general rule of admissibility had "virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." *Id.*

Our circuit has interpreted *Old Chief* to apply only in cases where the disputed evidence "relate[s] . . . to facts far removed in time from the underlying [crimes] with which [the defendant] was charged." *Dunford*, 148 F.3d at 396. Bivins's case does not fall within this exception. In order to secure Bivins's conviction, the prosecution had to show that Osorio was using drug funds to purchase real estate and that Bivins knew the funds were derived from this criminal activity. Therefore, the drug distribution conspiracy, which was occurring at the very same time Bivins was conducting his illegal monetary transactions, was "a relevant part of the very transactions leading to [Bivins's] arrest and indictment *in this case*." *Id.* at 396. Under these circumstances, it was not an abuse of discretion to admit evidence showing that Osorio and Karen were engaged in a drug conspiracy despite Bivins's willingness to stipulate those facts.

2.

Bivins also argues that the district court erred when it admitted hours of taped telephone conversations between Osorio and Karen. Bivins argues that none of the conversations should have been admitted or, in the alternative, that it was error to admit the conversations in their entirety. We disagree on both counts.

During its case-in-chief, the government sought to introduce recordings and transcripts of numerous intercepted telephone conversations between Osorio and Karen. The conversations covered a wide range of topics, including Osorio's real estate investments, Bivins's role and involvement in Osorio's real estate transactions, and MCM (the loan company). The government argued that the conversations were admissible under Federal Rule of Evidence 801(d)(2)(E), which says that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. The district court admitted the evidence over Bivins's objection.

To admit a statement under Rule 801(d)(2)(E), a court must conclude "(1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy. The government must establish these elements by a preponderance of the evidence." *United States v. Neal*, 78 F.3d 901, 905 (4th Cir. 1996) (internal quotations marks and citations omitted). Bivins argues that the district court failed to make these preliminary findings before admitting the statements. Even assuming the district court made no such findings, our circuit has repeatedly held that "although [it is] preferable for [a] trial court to make explicit rulings, [the appellate] court may affirm if [its] review of the record shows that the statement was made during the course of and in furtherance of the conspiracy." *Id.* (citing *United States v. Blevins*, 960 F.2d 1252, 1256 (4th Cir. 1992).

A review of the record indicates that, by a preponderance of the evidence, there was a conspiracy to launder money involving the declarants (Osorio and Karen) and the party against whom admission of the evidence was sought (Bivins). Osorio testified that Karen was responsible for overseeing and disbursing Osorio's drug proceeds. In that role Karen helped Osorio buy several pieces of real estate. Bivins, in turn, testified that Karen had prepared numerous false loan applications for Osorio, which she handed over to Bivins. Bivins admitted that he then submitted those applications to various lenders knowing they contained false information. We believe this testimony showed, by a preponderance of the evidence, that Osorio, Karen, and Bivins were all engaged in a conspiracy to launder money.

The more difficult question is whether the admitted telephone conversations were all made "in furtherance of the conspiracy." It is clear that certain statements were in furtherance of the conspiracy. For example, portions of the conversations discuss Osorio and Karen's relationship to MCM, and other segments show Bivins's role in Osorio's real estate transactions. However, it is equally clear that certain portions of the admitted conversations had nothing to do with furthering the money laundering conspiracy. For example, at one point in the transcripts, Osorio and Karen discuss at length whether Osorio should purchase contact lenses. Later in the conversation they debate the talents of various rap artists. These far-flung discussions had noth-

ing to do with furthering the conspiracy and therefore should not have been admitted under Rule 801(d)(2)(E).

Although the district court erred in admitting certain portions of the transcripts, that does not automatically entitle Bivins to any relief. If "such errors or defects . . . d[id] not affect the substantial rights of the parties, we must not reverse." *United States v. Siers*, 873 F.2d 747, 749 (4th Cir. 1989) (citing 28 U.S.C. § 2111). *See also* Fed. R. Crim. Proc. 52(a). The Supreme Court has held that an error "affects substantial rights" if it was "prejudicial," meaning that "[i]t must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). In this case the erroneously admitted evidence was, by Bivins's own description, "idle chatter." Appellant's Br. at 54. It is unclear how Osorio and Karen's discussions about topics as far ranging as contact lenses and rap artists could have possibly affected the outcome of Bivins's trial. After reviewing the record as a whole, we conclude that any of the admitted Rule 801(d)(2)(E) statements that prejudiced Bivins were also made in the furtherance of the conspiracy. Accordingly, any error committed by the district court in this area was harmless.

3.

Bivins's last argument about evidentiary rulings is that the district court abused its discretion when it permitted the government to ask Bivins's character witnesses certain hypothetical questions during cross-examination. Bivins called several character witnesses who testified that they believed Bivins was a law abiding person who would not knowingly cheat. On cross-examination the prosecutor asked each witness if his view of Bivins would change if he knew that Bivins had lied under penalty of perjury on a bankruptcy petition or that he had provided false W-2 forms to obtain a loan. Bivins objected, but the district court permitted the witnesses to answer.

Bivins claims that the district court should have barred the prosecutor's line of questioning under *United States v. Mason*, 993 F.2d 406 (4th Cir. 1993). In *Mason* the defendant was charged with distributing drugs. There, the defendant called a character witness who testified that his "reputation was one of an honest and reliable person." *Id.* at 407. On cross the prosecutor asked the witness, "Would your opinion

of [the defendant] change if you knew he distributed drugs? . . . If you did, if that were, in fact, true, and this jury thought it was true, would your opinion of him change?" *Id.* at 408. The district court allowed the question to be answered over the defendant's objection. We reversed, holding that "questions put to defense character witnesses that assumed a defendant's guilt of the crime for which he was charged were improper." *Id.*

Bivins's case is notably different from the *Mason* case. During his own testimony, Bivins admitted that he had lied under penalty of perjury on a bankruptcy application and that he had submitted false W-2 forms on a loan application. The prosecution thereafter asked Bivins's character witnesses whether their view of him would change in light of these admitted acts. The prosecutor's questions did not assume Bivins was guilty of the crime charged. In fact, the questions did not assume anything because they were based on admissions Bivins had made in open court. Accordingly, we find no error.

E.

Finally, Bivins argues that the district court made two errors in instructing the jury. We review jury instructions to insure that they "fairly state[ ] the controlling law." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990). A judgment will be reversed for error associated with the jury instructions "only if the error is determined to have been prejudicial, based on review of the record as a whole." *Sturges v. Matthews*, 53 F.3d 659, 661 (4th Cir. 1995) (internal quotation marks and citations omitted).

1.

Bivins claims that the district court erred when it instructed the jury on how it should weigh Osorio's accomplice testimony. The specific instruction is this:

> You have heard a witness [Osorio] who testified that he was actually involved in planning and carrying out the crimes charged in the indictment. . . . [I]t is the law in federal courts that the testimony of accomplices may be enough in itself

for conviction, if the jury finds the testimony establishes guilt beyond a reasonable doubt. However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

J.A. 459. Bivins argues that it was error to say that Osorio "testified that he was actually involved in planning and carrying out the crimes charged in the indictment." Bivins believes this statement was improper because Osorio never actually admitted that he was part of any conspiracy to launder money. Rather, Bivins argues, Osorio only admitted to being a drug dealer. We believe the district court's instruction accurately reflected the nature of Osorio's testimony. Osorio plainly testified that he and Karen used drug proceeds to buy the real estate listed in the indictment. Therefore, Osorio literally admitted that he was involved in planning and carrying out the money laundering conspiracy charged in the indictment. As discussed above, the evidence showed that Bivins decided to join that conspiracy through his willful blindness. Although Osorio did not say that he had conspired directly with Bivins, that does not change the fact that Osorio planned the conspiracy which Bivins eventually decided to join. Accordingly, we find no error in the district court's instruction.

2.

Bivins argues that the district court erred when it refused to submit his requested instruction relating to the wire fraud counts. At trial Bivins admitted that he prepared or assisted in preparing a number of false documents that were submitted to financial institutions in connection with loans. Bivins maintained, however, that the government had failed to show that he had the mens rea necessary to convict under the federal wire fraud statute. *See, e.g.*, *United States v. Loney*, 959 F.2d 1332, 1337 (5th Cir. 1992) (conviction for wire fraud requires government to show "that the defendant intended for some harm to result from his deceit"). Specifically, Bivins tried to convince the jury that he never intended to cause financial harm or loss to any financial institution because he believed Osorio would pay back all of the secured loans. In order to highlight his lack of intent to cause loss or harm, Bivins requested a jury instruction stating:

As to Counts VI through XI of the indictment, the defendant agrees that he prepared, signed, and caused to be submitted to mortgage lenders various loan documents that he knew to be inaccurate and untrue. However, the defendant claims that he did not engage in such conduct with an intent to defraud any mortgage lender because at the time he prepared, signed, and caused to be submitted the loan documents in question, he didn't actually intend to cause any mortgage lender any harm or loss.

If you find that the government has failed to prove beyond a reasonable doubt, as to any wire fraud count, that the defendant intended to cause a loss or harm to the mortgage lender named in that count then you must find the defendant not guilty as to that count.

J.A. 513. The district court declined to give the instruction.

We have held that "a district court's refusal to provide an instruction requested by a defendant constitutes reversible error only if the instruction . . . was not substantially covered by the court's charge to the jury." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995). *See also United States v. Fowler*, 932 F.2d 306, 316-17 (4th Cir. 1991). Likewise, we have held that "[t]he district court is not required to give defendant's particular form of instruction, as long as the instruction the court gives fairly covers a theory that the defense offers." *United States v. Smith*, 44 F.3d 1259, 1270-71 (4th Cir. 1995).

The instruction Bivins requested was adequately covered in the district court's charge to the jury. The jury was instructed that "the government must prove beyond a reasonable doubt that [Bivins] . . . participated in the scheme to defraud knowingly, willfully, and *with the intent to defraud*." J.A. 493 (emphasis added). The jury was then told that "intent to defraud means to act knowingly with the specific intent to deceive for the purpose of causing some financial or property loss to another." J.A. 494. The court later repeated these instructions, telling the jury: "if you find the defendant . . . lacked the specific intent to defraud, you should acquit the defendant. On the other hand, if you find that the government has proven beyond a reasonable doubt . . . that the defendant . . . acted with the specific intent to defraud . . .

then you have sufficient basis upon which to convict." J.A. 497. Because the district court repeatedly referred to the government's duty to establish a specific intent to defraud, it was not an abuse of discretion to deny Bivins's requested instruction.

## III.

For the reasons stated, we affirm Alton F. Bivins, Jr.'s conviction.

*AFFIRMED*