**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-4683**

---

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

WILLIAM KING,

            Defendant - Appellant.

---

**No. 06-4724**

---

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

ANTONIO MURRAY,

            Defendant - Appellant.

---

Appeals from the United States District Court for the District of
Maryland, at Baltimore.   J. Frederick Motz, District Judge.
(1:05-cr-00203-JFM)

---

Submitted:  February 28, 2008         Decided:  March 19, 2008

---

Before WILKINSON and MICHAEL, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

G Arthur Robbins, CHESAPEAKE MERIDIAN, Annapolis, Maryland; Donald E. Kaplan, LAW OFFICE OF DONALD KAPLAN, Baltimore, Maryland, for Appellants. Rod J. Rosenstein, United States Attorney, Charles J. Peters, A. David Copperthite, Assistant United States Attorneys, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William King (Appeal No. 06-4683) and Antonio Murray (Appeal No. 06-4724) appeal their convictions by a jury and sentences on charges of conspiracy to distribute narcotics, conspiracy to interfere with commerce by robbery and extortion, in violation of 18 U.S.C. § 1951 (2000) (Count 1); conspiracy to distribute cocaine base, cocaine, heroin, and marijuana, in violation of 21 U.S.C. § 1951 (2000) (Count 2); and conspiracy to possess firearms in furtherance of a drug trafficking conspiracy, in violation of 18 U.S.C. § 924(o) (2000) (Count 3). In addition to Counts 1, 2, and 3, as set forth above, King was charged in a Superseding Indictment with nine counts of possession with intent to distribute narcotics, in violation of 21 U.S.C. § 841(a)(1) (2000) (Counts 4, 5, 7, 8, 14, 18, 22, 26, and 30); seven additional counts of interference with commerce by robbery and extortion, in violation of 18 U.S.C. § 1951 (2000) (Counts 10, 12, 16, 20, 24, 28, and 32); and fourteen additional counts of possession of a firearm in furtherance of a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (2000) (Counts 6, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33). In addition to Counts 1-3 above, Murray was named as a defendant in Counts 7, 10-15, and 20-27. The jury found King guilty of all drug and Hobbs Act counts and thirteen counts of possession of a firearm in furtherance of a crime of violence or drug trafficking crime.

- 3 -

Murray was found guilty of all drug and Hobbs Act counts and six counts of possession of a firearm in furtherance of a crime of violence or drug trafficking crime.

The district court sentenced King on June 16, 2006, to concurrent 121-month terms of imprisonment on the drug and Hobbs Act counts (Counts 1-5, 7, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, and 32); to a 60-month term of imprisonment on one of the firearm counts (Count 6), to run consecutively to the 121-month sentence; and to twenty-five years' confinement on the remaining twelve counts (Counts 9, 11, 13, 17, 19, 21, 23, 25, 27, 29, 31, and 33), to run consecutively to the other sentences and to each other, for a total sentence of 3660 months' (305 years) imprisonment. King was further sentenced to a total term of supervised release of four years, and ordered to pay a statutory assessment of $3200. An amended judgment was filed on June 26, 2006.

The district court sentenced Murray to concurrent 108-month terms of imprisonment on the drug and Hobbs Act counts (Counts 1-3, 7, 10, 12, 14, 20, 22, 24, and 26); to a 60-month term of imprisonment on one of the firearm counts (Count 11), to run consecutively to the 108-month sentence; and to twenty-five years' confinement on the remaining five counts (Counts 13, 21, 23, 25, and 27), to run consecutively to the other sentences and to each other, for a total sentence of 1668 months' (139 years)

imprisonment. Murray was further sentenced to a total term of supervised release of five years, and ordered to pay a statutory assessment of $1700.

On appeal, King and Murray challenge the charges in the Superseding Indictment, asserting that they constitute undue multipliciousness of charges; claiming the evidence was insufficient to support the jury's conclusion that their service weapons were carried in furtherance of the offenses alleged; contending that the jury instructions failed accurately to identify the elements of the offenses as alleged; and asserting that the district judge erred in determining that he had no discretion to ameliorate the alleged irrational sentence structure created by the Government's charging choices in this case. We affirm.

At trial, the following evidence was introduced. From 2004 until their arrest on May 16, 2005, King and Murray were employed as detectives by the Baltimore City Police Department and worked primarily in the Public Housing Drug Enforcement Unit, concentrating on drug enforcement in public housing and surrounding areas in Baltimore City. While working as police detectives, King and Murray conspired with Antonio Mosby ("Mosby"), and others not named in the indictment, to rob drug traffickers on the streets of Baltimore City. Mosby and others would identify persons on the street who were in possession of narcotics and proceeds from the sale of narcotics. Mosby would then contact King and Murray, who

would detain these persons under guise of police activity. During the course of the detention, and while armed with their service weapons, King and Murray threatened arrest and prosecution, took control of controlled substances, including cocaine base, heroin, and marijuana, and the proceeds from the sale of such controlled substances, from these persons. After the robberies, King and Murray distributed the seized narcotics to Mosby and others to sell on the street. The evidence demonstrated that King and Murray would split the profits from the sale of narcotics, as well as any proceeds recovered from the person they had detained. At trial, King and Murray maintained that their activities were all in furtherance of legitimate police activity in an effort to develop sources to lead to arrests of drug distributors above the street level individuals with whom they were interacting and that the proceeds of the activities were paid out to informants, principally Mosby.

Mickey Harvey testified at trial that he was arrested by King in 2003 after King pulled out his gun, put it to Harvey's head, and detained Harvey in King's police vehicle. Harvey testified that he was released without charges and thereafter began to work with both King and Murray. Harvey would spot drug dealers and notify King and Murray of the dealers' locations. King and Murray would then detain these individuals, rob them of their drugs and drug proceeds, give the stolen drugs to Harvey to sell, and

- 6 -

split the stolen proceeds among them as King and Murray deemed appropriate.

Davon Mayer testified that King arrested him in 2003 and released him without charges. Mayer agreed to work for King by locating drug stashes on the street which King could steal. King would then either sell the drugs to Mayer, or Mayer would take the drugs and sell them, splitting the proceeds with King. Mayer ultimately went to the Federal Bureau of Investigation ("FBI") with information about King, and agreed to cooperate with the FBI.

Mosby attested that he also was arrested in 2003 by King and Murray. He testified that both King and Murray were armed when they placed him into their police car. Mosby was released without charges and began working with King and Murray by identifying drug dealers for King and Murray to rob and locating drug stashes for them to steal. Mosby would call King and Murray with a description of the dealers, and they would drive up in their police vehicle, physically detain the dealers on the street or in the car, search them, and take their money and drugs. After the robberies, King and Murray would meet with Mosby and usually sell the stolen drugs to Mosby for one-half the street value of the drugs. Mosby would, in turn, sell the drugs, making a 100 percent profit.

During trial, and during their own testimony, neither King nor Murray disputed that they were armed with loaded service revolvers during these street encounters. The Government

introduced evidence that, on April 7, 2005, King and Murray picked up Mosby in anticipation of robbing drug dealers. When King realized that he did not have his service revolver, he and Murray drove back to the police station to pick up the weapon. After retrieving the weapon, they met with Mosby and resumed their activities.

Appellants' first and fourth challenges relate to the multiple § 924(c) offenses as set forth in the Superseding Indictment, and the resultant 25-year mandatory minimum consecutive sentences imposed by the district court on the related convictions of those charges. They first claim that the § 924(c) charges for each incident based on the firearms that they were required to possess as a function of their status as police officers violated their Due Process rights and the Fifth Amendment's prohibition against Double Jeopardy. Appellants contend that, while they made no pretrial objection to the multiple counts, they were prejudiced by the district court's treatment of each § 924(c) count as a "subsequent conviction" for purposes of sentencing, which resulted in multiple, consecutive sentences. They argue that the manner in which they were sentenced illustrates an infirmity in the analyses of <u>Deal v. United States</u>, 508 U.S. 129 (1993), and <u>United States v. Camps</u>, 32 F.3d 102 (4th Cir. 1994), and that such analyses should be "revisited" in the context of an ongoing conspiracy. Secondly, Appellants assert that the multiple § 924(c) counts on which they

- 8 -

were convicted and sentenced violate the Eighth Amendment's prohibition against cruel and unusual punishment, and that the district court erred in finding that it had no discretion but to impose consecutive 25-year sentences for each § 924(c) conviction.

This court reviews <u>de</u> <u>novo</u> a claim of multiplicity.[1] <u>United States v. Mancuso</u>, 42 F.3d 836, 847 n.11 (4th Cir. 1994). Appellants admit that their failure to raise this issue prior to trial renders the objection waived, absent demonstration of cause for the failure to object and actual prejudice resulting from the defect. <u>See</u> Fed. R. Crim. P. 12(f); <u>United States v. Colton</u>, 231 F.3d 890, 909 (4th Cir. 2000).

We find Appellants' challenges to the imposition of consecutive 25-year sentences on each § 924(c) conviction,[2] to the extent their challenges were not waived by their failure to object, are unavailing, as such sentences were mandated by law, were not unconstitutional, and were properly imposed. <u>See</u> <u>Deal</u>, 508 U.S. at

---

[1]Appellants do not actually advance a true "multiplicity" claim, <u>i.e.</u>, that the indictment charged a single offense in several counts, and, indeed, review of the indictments in this case reveals that each count charged a different offense. <u>See</u> <u>United States v. Colton</u>, 231 F.3d 890, 909 (4th Cir. 2000). Rather, the foundation for Appellants' challenges is that the imposition of consecutive sentences for multiple § 924(c) convictions was illegal or improper.

[2]To the extent Appellants seek to raise proportionality review under the Eighth Amendment, such review is not available for any sentence less than life imprisonment without the possibility of parole. <u>United States v. Ming Hong</u>, 242 F.3d 528, 532 & n.3 (4th Cir. 2001).

137; Camps, 32 F.3d at 107.  See also United States v. Robinson, 404 F.3d 850, 862 (4th Cir. 2005) (vacating concurrent sentences imposed by district court on eight separate § 924(c) violations, holding that the sentences for each § 924(c) conviction must be consecutive to the others, resulting in a minimum sentence for Robinson of 2184 months' imprisonment, and noting that a district court has no discretion to impose a sentence outside the statutory range established by Congress for the offense of conviction);[3] United States v. Khan, 461 F.3d 477, 495 (4th Cir. 2006) (consecutive sentences mandated by § 924(c), even where unusually lengthy and exceeding a defendant's reasonable life expectancy, do not offend the Eighth Amendment).[4]

There is no question in this case that Appellants committed different robberies on separate occasions, distributed or possessed with the intent to distribute drugs on separate

---

[3]See Harmelin v. Michigan, 501 U.S. 957, 994 (1991) ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense . . ..").

[4]To the extent Appellants' cursory reference, without specific argument, of a challenge to the Due Process and Double Jeopardy Clauses of the Constitution is sufficient to warrant review by this court on appeal of those challenges, they likewise are without merit.  Section 924(c) violates the Due Process Clause only if Appellants can demonstrate that the statute "lacks a rational basis," which it does not.  See Khan, 461 F.3d at 495.  Moreover, as long as the underlying crimes on which the consecutive § 924(c) sentences are based are not duplicative, i.e., they do not relate to identical criminal acts, they do not violate the Double Jeopardy Clause.  Id. at 494.  Given that each § 924(c) count on which Appellants here were sentenced related to a different criminal act, any Double Jeopardy challenge would fail.

- 10 -

occasions, and possessed firearms in furtherance of a crime of violence or a drug trafficking crime on each of those occasions. As such, the imposition of consecutive sentences for each § 924(c) count is mandated by Congress, consistent with the plain language of § 924(c), and does not offend constitutional rights and principles set forth in the Fifth or Eighth Amendments.

Appellants next claim that the evidence was insufficient to support their § 924(c) convictions. Specifically, they challenge the jury's determination that they possessed a firearm "in furtherance" of the 21 U.S.C. § 841(a) and 18 U.S.C. § 1951 crimes alleged. They do not challenge their convictions for the predicate crimes of violence and drug trafficking crimes that underlie each § 924(c) conviction, nor do they dispute that they possessed firearms during the commission of the predicate offenses. It is further undisputed that the predicate crimes occurred in high-crime areas marked by drug-trafficking and violence. Appellants also agree that their "guns were accessible, fully loaded, always on their person, available for self-defense, and near drugs." During trial, Appellants testified that they always were in possession of their firearms, and that they possessed them for protection.

In evaluating the sufficiency of the evidence supporting a criminal conviction on direct review, "[t]he verdict of the jury must be sustained if there is substantial evidence, taking the view

most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). Substantial evidence is evidence "that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). This court considers circumstantial and direct evidence, and allows the government the benefit of all reasonable inferences from the facts proven to those sought to be established. Id. at 858; United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). In resolving issues of substantial evidence, this court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Rather, it is the role of the jury to judge the credibility of witnesses, resolve conflicts in testimony, and weigh the evidence. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984). Thus, a defendant challenging his conviction based upon the sufficiency of the evidence "bears a heavy burden," United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted), as "a decision [to reverse for insufficient evidence] will be confined to cases where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).

Section 924(c) requires evidence indicating that the possession of a firearm "furthered, advanced, or helped forward" the predicate crime. United States v. Lomax, 293 F.3d 701, 705

(4th Cir. 2002). It is sufficient to establish that the purpose of the firearm was to "protect or embolden" the defendant. <u>United States v. Sullivan</u>, 455 F.3d 248, 260 (4th Cir. 2006). Even without evidence of brandishing or firing of a weapon, the carrying of a firearm during a drug trafficking crime supports the jury's finding that a defendant carried it for his personal protection, thus satisfying the applicable standard. <u>Id.</u>

Appellants' argument is that the testimonial evidence introduced by the Government established merely that King and Murray possessed their service firearms during the commission of the predicate offenses, but that it did not demonstrate, beyond a reasonable doubt, that they possessed the firearms in furtherance of their crimes. They base the distinction on their allegation that their possession of their firearms was legal because they were police officers, rather than illegal. They further assert that their possession of their firearms was "merely incidental" to their status as police officers, and that there was no evidence that the weapons played any role in the offenses proved.

We find that the distinction Appellants attempt to make is both disingenuous and without a difference. While they may legally have possessed their service weapons for protection, intimidation, and to embolden them during the commission of legitimate police activities, the possession of those same firearms did not suddenly cease to be protection, intimidation, or

emboldening devises during their commission of illegal activities. Moreover, the Government introduced testimonial and tape-recorded evidence that demonstrated clearly that, on April 7, 2005, King and Murray interrupted their illegal activities to recover King's firearm before continuing with such activities. This evidence, together with the plethora of evidence that Appellants possessed their weapons in plain view of those from whom they stole drugs and drug proceeds, fully supports the jury's finding that Appellants possessed their firearms in furtherance of their crimes. See Burgos, 94 F.3d at 857, 858.

Appellants' final issue on appeal is whether the jury instructions constructively amended or created a variance in the §§ 924(o), (c) counts of the indictment, causing prejudice to them. Specifically, they claim there was constructive amendment of Count 3, which charged knowing, intentional, and unlawful possession of firearms during a conspiracy in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o), and Counts 6, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, the counts which charged knowing, intentional, and unlawful possession of a firearm in furtherance of a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(c), because the jury instruction failed to include the element of "unlawful" possession that was charged in the indictment. As Appellants correctly note, "unlawfully" is not an element in either § 924(c) or (o), yet the

Government included the term in its Superseding Indictment. The instruction given in this case relative to this issue allowed the jury to convict Appellants on evidence of "'possessing' a firearm in furtherance of a crime," not "unlawfully" possessing a firearm, as was charged in the indictment. In the alternative, Appellants contend that the inclusion of the term "unlawfully" in the indictment was a "variance," which resulted in unfair surprise and prejudice, requiring reversal of their convictions. They claim that the elimination of the word "unlawfully" from the jury instruction was error because the jury was instructed that it could convict on a "different, easier to prove version of the offense charged."

Constructive amendments are error per se and "must be corrected on appeal even when not preserved by objection." United States v. Floresca, 38 F.3d 706, 714 (4th Cir. 1994).[5] A constructive amendment occurs when the bases for conviction are broadened beyond those charged in the indictment. United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). A constructive amendment is where "the indictment is altered 'to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the

---

[5]Appellants here failed to raise this issue in the district court.

- 15 -

indictment.'" <u>Id.</u>, quoting <u>United States v. Schnabel</u>, 939 F.2d 197, 203 (4th Cir. 1991).

Here, the term "unlawfully" in the charging document was not a separate element. Rather, it was a descriptive term characterizing the actions of King and Murray as "unlawful" in possessing firearms in furtherance of the (unlawful) crimes charged in the indictment. Stated differently, the use of the term "unlawfully" conveyed to King and Murray that the Government believed their conduct to be against the law cited in the indictment. We therefore find that the use of the term "unlawfully" in the Superseding Indictment was mere surplusage, did not add an element or in any way change the nature of the charges, and did not prejudice King or Murray, who vigorously defended their case and at no time raised the issue below. <u>See</u>, <u>e.g.</u>, <u>United States v. Miller</u>, 471 U.S. 130, 136-37 (1985). Given that the inclusion of the term "unlawfully" in the indictment, and the subsequent failure to instruct the jury about this term, did not impermissibly broaden the charges such that Appellants were convicted of a crime other than that charged, <u>Randall</u>, 171 F.3d at 203, their claim of error is without merit.[6]

_____

[6]Nor was there a variance because the characterization of the charged conduct as unlawful had no impact on the "circumstances alleged in the indictment." <u>See, e.g.</u>, <u>Floresca</u>, 38 F.3d at 709.

Accordingly, we affirm the convictions and sentences of King and Murray. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>